Good morning, your honors. I'm Valerie Horn on behalf of Valerie F. Horn and Associates for the appellant person Horn. I'm here, first of all, to address the issue of the timeliness of the 2044 motion that was filed by the government on March 8. Initially, the federal insurance company filed an ex parte application on March 7 at 1239 p.m. after Mr. Hamadani had already surrendered himself, thus exonerating the bond as a matter of law. Thereafter, the court stayed... How do we know it was before? Because the order mandated that he surrender himself before noon on that day. You never had a client violate one of those orders? I don't have evidence that Mr. Hamadani... I don't have any evidence at all. How do I know when he surrendered? I mean, people surrender late all the time. I don't have... You made a statement. You made an assertion that it happened after he surrendered. So I'm asking you, what in the record supports that? Well, we know that Mr. Hamadani surrendered himself on March 7, whether it was before noon or afternoon. The fact is that the government did not file their motion until March 8. And indeed, there's the verification of surrender in the record showing that Mr. Hamadani did surrender himself on March 7. But we don't know when. We don't know when. That is correct. It might have been after federal insurance filed its motion, right? Yes, it may have been. Okay. However, the Federal Insurance Company has no standing under Section 2044 to make a motion for the seeking the restitution under the under that particular statute. That particular statute says the government has the right to seek the to obtain the funds under the restitution order. And so basically, the Federal Insurance Company's filing of an ex parte application on March 7th is a nullity because they had no standing to even file that application. And thus, the government then filed a... I mean, they suffer financial consequences if this money goes to you, right? Yes, but, Your Honor, my client will also suffer the financial consequences if the money does not go to him that were earned under his attorney-client fee agreement. It's true, but that's not the question I asked. Yes, admittedly. They do have – it is not for a lack of an interest in the controversy they don't have standing in your argument. It's just simply the statute doesn't give them standing. That is correct, Your Honor. And in addition, the bond money is not meant to fund a restitution order. The bond money is to secure the defendant's surrender, which indeed did happen here. And so if the government is going to try to seize the bond money under the restitution order, then they would have to follow the law in order to perfect that restitution – in order to perfect the restitution order against a competing claimant, which they did not do in this circumstance. This all assumes it's Mr. Horn's money, but it sure looks like it's the client's money. His brokerage account was liquidated by order of the court, the money deposited in Mr. Horn's trust account, and then just funneled through the trust account to the court. Is that wrong? Well, that is – it is correct what you are saying, Your Honor. However, once the funds were received by Mr. Horn in his trust account, that – those funds were used to pay his attorney's fees. And that – I don't see that. It looks like it was dollar for dollar, went from the brokerage account to the court without any – any disbursement of fees. Well, the law does not require for the funds to make it – to interlope into Mr. Horn's trust account, into Mr. Horn's, you know, business account, and then to pay the – to post the bond. Indeed, the affidavit that was filed by Mr. Horn and indicated under the financial entry in the docket showed that Mr. Horn claimed to be the owner of those funds. And so – Well, it's a trust account. Isn't he holding it in trust with the client? No, because what happened was the check was a mixed check. It was a check for his attorney's fees and cost advanced. And in – and the ethical rules of conduct require that where there's a mixed check, it must go into the trust account, and then the portion that's owned by the attorney is taken out at the first – What made it a mixed check? I understood the court order to be he's to take out the entire amount of funds on deposit with the brokerage and use that to pay the bail. It was a mixed check. Then there's one check for whatever the amount was, goes into the account, and it goes out of the account into the court. It was a mixed check. What makes it a mixed check? I'll tell you. It was paid to Mr. Horn for a $79,000 in his attorney's fees, and the balance was for a cost. That's contrary to what the bail order was, though. That's true. It's not what the bail order said, but, indeed, that's what happened in fact. You're saying that the money was Mr. Horn's? Yes, sir. And so – and that he then used his money, his fees, to pay the client's bail? That's correct. Even though the local rule says that no attorney appearing in the case will be accepted as surety upon any bond or undertaking. So that was in violation of that rule? Your Honor, it appears what the court did was the court reviewed the bond posted by Mr. Horn. In the order, it noted entries from the bond posted by Mr. Horn, and it referenced the affidavit that Mr. Horn submitted to the court in connection with posting the bond. Now, the court did closely scrutinize these bonds that were posted. Indeed, the two real estate bonds that were posted, the court rejected initially because they weren't in compliance with the details of the representations made regarding the real property, and the financial entry in the docket reveals that the court did indicate that the – whoever made the docket entry, I don't know if it was the court, said the funds were posted by Person Horn. So Mr. Horn made the appropriate disclosures. The local rule is for a policy consideration. It's to prevent an attorney from selling out his client early to get his money, which is a violation. Well, I hear what you're saying, but it seems to me it's simple English and mandatory. No attorney appearing in the case will be accepted as short upon any bond or undertaking in any action or proceeding in this court. Policy schmolicy. It's – the language is clear. I understand the rule. However, the court did accept Mr. Horn's posting of the bond. And so the rationale behind the policy was, in fact, played out where this matter was continued several times. And so, in true fact, Mr. Horn didn't sell out his client early to get his money, and here we are a year later fighting over this. So the facts bear out that the policy behind that order, apparently the court knew that Mr. Horn posted the bond because he submitted it in the pre-sentencing order. Again, he disclosed it, and the court approved it. And so I – so as far as the policy reasons behind that rule, it seems like the court then made an exception in this circumstance. Mr. Horn, do you have a copy of the Affidavit of Reappearance Bond handy? Yes, I do. It says, I, Gerson S. Horn. And then right next to it looks like somebody's written in their client trust account. Do you see that on there? Yes. If it's really Mr. Horn's money, why would it say client trust account on there? Because it – Mr. Hamadani received one check. That check was partially for Mr. Horn's fees. It was $79,000 in Mr. Horn's fees. And the balance was for a cost deposit. And so because it was one check that had a cost deposit that Mr. Horn wasn't entitled to receive, that one check had to go into his trust account under the Rules of Professional Conduct, Rule 4-100. And then the funds that didn't belong to Mr. Horn as the cost deposit remained in the balance was Mr. Horn's money. That's why it noted from his trust account, because it was one check that had his earned fees and a cost deposit. So he couldn't split the check in two, as is often the case. A client pays an attorney. Why couldn't the check be deposited in the trust account and Mr. Horn pay himself? He could have done that. He didn't do it. But that's not required in order for him to do it. Well, I mean, if you don't do it, it looks like it's acting as a conduit. I understand that. But the fact that it didn't go through his personal business account does not convert the nature of those funds from being anything other than his money. Okay. Does the panel have any other questions? I think you're out of time.   Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Henry Zangwill. I am representing Federal Insurance Company. I am dividing my time with the U.S. government, who will be addressing some of the other issues here. Mr. Whittlesey will be taking the second half of the time allotted to our side. The issue before this Court is whether the Court should grant relief to a litigant who made misrepresentations to the trial court with respect to the nature of the bail which was going to be posted, who disregarded the California rules of professional conduct in terms of interest. Whether you have standing to be here at all. Your Honor, my client is the aggrieved party. Well, there's lots of stuff people are aggrieved about which they just have no claim over. So stuff happens. And why does your client have any rights here that are vindicable in this proceeding? Is it time to file a motion? A 2044 motion? Your Honor, my client is the beneficiary of a restitution order issued by the Court. We petitioned the trial court. Under what? Well, under both the equitable right to enforce the restitution as well as we believe the When you say implied right, you mean it's not in the section? It is not expressly in the section, Your Honor. You are correct. Well, where is it implied? Where does it say anything about the surety? We believe I've got it right in front of me. Just point to me the words. Your Honor, there is nothing in the section itself that provides that the beneficiary of a restitution order can make that motion. Why isn't your motion in the District Court the novelty? Just, you know, as if you had filed it under Section 42, 1983 or Title 49 or something, you know. It's just not something that gives you any rights. Why is this motion give you any rights or anything to appeal? Your Honor, as the beneficiary of the restitution order, we believe that we had the right to petition the trial court, which we did, to get the Well, I know, but, you know, as I said to previous counsel, your personal belief doesn't matter at all. I mean, you may believe that. The point is to cite some authority to persuade us to believe the same thing. So what is it you point to? You say it's not in Section 2044, right? That is correct, Your Honor. Okay. Is there a case interpreting it saying, even though it's not in there, assured it can nevertheless bring a 2044 motion? Your Honor, we do not believe that Section 2044 is the exclusive remedy that is available No, that's perfectly fine. If you want to give up on 2044, we can move on to something else. I just want to nail down 2044 for the time being. So let's just focus on that. If you want to give up on it, it's fine with me. We can move on to other theories. But let's settle 2044 first. Your Honor, there is nothing within that section that gives a right to use force. You've already established that. You've said that three times. Yes. Is there a case that interprets 2044 that says that even though it's not in there, sure it nevertheless can bring such a motion? I know of no such case, Your Honor. Okay. So you don't have a language in the statute. You don't have a case. You're asking us to make totally new law here, right? So what do we base it on? I mean, usually what happens in Congress is we look at the words, we apply the words. And if they wanted to say that the government or surety can bring this kind of motion, Congress knew how to say that, right? Your Honor, there is nothing to prohibit an individual who is in a grieved party from seeking redress from the court, which is what we did. But we're talking about 2044. Your Honor, that does not provide a remedy unless the court finds that it is implied. I would agree with Your Honor. Okay. You don't have any arguments as to why it's implied. You just say it's implied because you're grieved. There's nothing in the words of it that implies it or anything like that, right? That is correct, Your Honor. Okay. Now, why are you aggrieved? I don't quite get it. I mean, the defendant surrendered. So why are you aggrieved in any way by this? Can the government come after you for this money? Your Honor, the reason why we are aggrieved is that we have suffered a financial loss that was recognized in a restitution order issued by the court in favor of my client and recognized by the trial judge at the time of the hearing on our application to the court. As the beneficiary of the restitution order, we are aggrieved. We are always mindful. Well, you're a beneficiary of the restitution order, not because this has nothing to do with the bond itself. That is correct, Your Honor. We believe that we have recourse to the bond in order to compensate us under the restitution order. We have the right to petition the trial court to apply the bond money in satisfaction of a portion of the restitution order. You don't have any case saying that that gives you standing, right? There's no case, Your Honor, that has addressed that other than the general cases that discuss the standing of an individual who has a financial loss to seek redress from the courts. We believe that we meet that test. We believe, as the party who has suffered a loss caused by the criminal defendant, that we meet that test. We believe that because the restitution order was issued in our favor, we have the right to petition the court to apply the bail money. What do you say to the argument that says, look, if Congress had wanted you to have that right, it would have written you into 2044. It didn't, and therefore you don't. You may be aggrieved, but it's just one of those things where you're aggrieved and just have no remedy in law. Stuff like that happens. Your Honor, there are equitable remedies in addition to those which are enacted by Congress. Congress is not the only source of redress by an injured party. We believe that under general equitable principles that we should be trying to see to it. Was there a schedule set in the judgment for the repayment, for the payment of restitution by the defendant? I believe that at the time of the restitution order, he was ordered to pay it within a certain period of time, and I don't have that with me right now, Your Honor. I apologize. But I believe that a certain amount was to be paid before incarceration, and a certain amount was to be paid before release. Is there any reason why your company's interests can't be protected by the government here? Your Honor, I believe that the government can protect our interests. That is correct. And I believe that in addition to those, the efforts by the government, that Federal Insurance ---- There is a difference in that you actually might have filed before the defendant surrendered, whereas the government clearly did it afterwards. And that might be a distinction that makes a difference. Your Honor, I believe that the fact that we petitioned first underscores the rights that we believe that we had. You don't have any evidence that you filed before he surrendered, do you? No, I don't, Your Honor. The time of surrender is not fixed on any paper that's been filed. Well, he was ordered to surrender by noon, and the penitentiary issued a statement that he had surrendered, did not give a time. So while hypothetically it could have been a late surrender, at least the ostensible record indicates compliance with the order, meaning before noon. Now, if you had contrary evidence, that would be another thing, but you don't, correct? That is correct, Your Honor, but there is no requirement, I believe, that the bail money cannot be available before while it is still in the possession of the government. The mere fact that he may have surrendered by noon does not mean that the bail money, which is still within the depository of the court, cannot – that we would not have resort to it as any other funds of the defendant in order to satisfy the restitution order. Otherwise, the policy – Unless the surrender exonerated the bond immediately, and at the time of surrender, it reverted to whoever owned the money to begin with, right? Your Honor, if the money that was to be posted with the court was to be the defendant's money, it was his money before and his money after, the fact that he surrendered and the bond may have been exonerated still does not affect the fact that it is the defendant's money, and we ask the court to take that money, which is the defendant's who is the beneficiary of the restitution order have the ability to enforce it. And I would also inquire of the – of Your Honors whether you want to hear from my colleague or – but I would be pleased to answer any other questions you have, certainly. Well, Your Honor, at this time, we'll give your colleague a couple of minutes. Please sit down. Thank you. May it please the Court, my name is Assistant United States Attorney Brent Whittlesey, and I will be addressing the issue of the proper disposition of the funds that are In this case, the district court ordered that the bond deposit be applied to Hamidani's criminal restitution judgment pursuant to Section 2044. But if the United States filed its motion, the bond would be exonerated. Yes, and it's a very interesting issue, Your Honor, about what exonerated means. Yes? Yes. Okay. So – Yes. Stop. You've answered my question. Certainly. So having exonerated, doesn't the money then revert to whoever owned it to begin with? No, because Section 2044 doesn't say what disposition is made of the money. Section 2044 says any funds deposited for the purpose of bond, except by a third-party surety, shall be applied to the defendant's criminal restitution judgment. Let's say the money had been returned to Mr. Holm – or sent to Mr. Holm by the district court before the United States had filed its motion. Yes. Would that still be covered by 2044? No. Okay. So then it is not anything that has been deposited. Anything that has been deposited still serves as a surety. But once – as a bond. No. Once it's exonerated by surrender, the mechanical process of whether it's actually sent to where it belongs, it seems to me, should make no difference at all. Well, it's not a mechanical process, though, Your Honor, because we have conflicting claims to that money. And we have claims of the United States under 2044, and we have claims of Federal Insurance and Hamadani and Horn. And – You're saying Hamadani still has claims to it? Well, it – presumably it's his funds, as Judge Silverman noted. So there are four potential claimants for the money. And the issue that the Court has to resolve is what – what rules apply to resolve Well, the question is whether under 2044, the money is still at that point in the deposit with the Court as a – as a surety. I mean, I – it seems to me once it's been exonerated, it changes character. It may still be physically in the Court's possession. It's – it certainly is money that was deposited for bond. It's money that's held by the United States. And it's money that – No, but I don't understand. What you're saying is that your approach would encourage the non-prompt return of the money to its rightful owner. If you had filed a claim – you say you have a competing claim for this money. That's why you have to make the claim before the bond is exonerated. But you didn't. I don't see anything in the statute, Your Honor, that says that it has to be filed before the bond is exonerated. The – the – once the bond is exonerated, it's – the money then, as a matter of law, is no longer a bond. It's money that's – that is deemed to have been returned to its rightful owner. The fact that it may take that one minute or one hour or one day or one week shouldn't make any difference. Well, even – even if the court finds that the 2044 motion was not timely filed, we believe that the government has offset rights under common law. The government owes Mr. Hamadani $89,000. That's in the registry of the court. And Mr. Hamadani owes the government $4.8 million. And we – we should be entitled to exercise those common law offset rights that are held by the government as a whole. Now, I – I'm sorry, where would the $89,000 go? It will go to Federal Insurance Company. So it's not going to U.S. Treasury, right? No. So what sense does it have, offset rights? Because we have a judgment for $4.8 million, and Mr. Hamadani will receive $89,000 of credit against the judgment. That's the offset. Is that – is that clear, Your Honor? The judgment is in favor of the United States? Yes. I think the United States pays it over to Federal Insurance? Yes, just by checks dispersed from the clerk of the district court. Judge Silverman had a question about – I'm still perhaps not totally following. Supposing the money didn't belong to a third party at all times, just assume that hypothetically. You would have no right to the money, correct? Yes. So your adversary says that it was at all times Mr. Horn's money. So if that – if we accept that, there are lots of questions about that. But if we accept that, that's – you agree that's the end of the issue, yes? Yes. Okay. And the reason, of course, why the Court should not accept that is because the district court found that it wasn't Mr. Horn's money, and that finding by the district court is supported by substantial evidence in the record that we've discussed. For example, the order said it was the defendant's 401k money, and – Well, once you've paid the money for us, where did the money start out, and how did it wind up with the district court? What were the various steps? I don't know, Your Honor. It's not in the record. Well, if it's not in the record, what basis is there for finding its defendants? If it's not in the record, then it sounds to me like you're just conceding that the district court's finding is unsupported. Well, it was certainly supported by the order, which said the defendant shall deposit the defendant's money, and it's also supported by the declaration of Assistant U.S. Attorney Angela Davis, who was the attorney for the government in connection with the case, which is part of the excerpts of record at page 56. I'm sorry. What does she say? Just a moment, Your Honor. I mean, I take it the fact that the district court says the defendant shall post a bond, if somebody else comes along and posts it, the district court isn't going to reject the money, right? It doesn't what, Your Honor? The court says the defendant shall post a bond, right? If somebody else comes along, let's say a benefactor comes along and says, I'll post the money, the district court won't reject the money, right, because it said the defendant shall post a bond. So long as good money is paid in there, the district court accepts the money, right? Well, I'm not so sure about that. You know, the purpose of bond is to secure the performance by the defendant of all the conditions of his release, particularly the requirement that he show up. If the defendant has money posted for bond, that he has an opportunity to recover upon the conclusion of the case. I mean, does the district court inquire into the source of the money that's paid in? Yes. And in this case, certainly did. Your Honor, the declaration of Ms. Davis is at page 56 of the excerpts of record. And I can read page 56, but I know Your Honor can do that, too. Well, why don't you point to me where, I have 50 and it jumps to 70. Yeah, so do I. Maybe it's a different book. Are there different pages? Is it the United States excerpt? No, Your Honor, it's the appellant's excerpts. It's the one that has Anderson and McFarlane? No, it's the appellant's excerpts. Appellant's. It just says excerpts of record. And that, to me, jumps. I'm sorry. Anderson and McFarlane is correct, Your Honor. It's the federal insurance company's excerpts. Okay. And what page is that again? 56. 56, okay. I'm looking at 56. Which line? Which line? What line were they relying on? Toward the bottom of paragraph number 5, Your Honor. At no point in the hearing were the funds ever described as being previously paid as attorney's fees. Okay. Well, how does that help you? Your Honor, it was the status of matters in the court when Bond was posted that it was the defendant's money, not money that belonged to the attorney, Mr. Horn. Remember the question we're pursuing is, I asked you to trace the money. Yes. Okay. To trace it to the defendant. And you said it's not on the record. You don't have that information. And at this point, you've pointed me to something that says there's no evidence either. At no point was evidence described in a certain way. So this is another statement of non-evidence. So it brings me back to my question is how do we trace this back to the defendant? What is on the record to support the district court's finding that this was the defendant's money? Simple enough question, right? Yes. It requires evidence. It requires, you know, something we can look at and say, oh, the district court had a rational basis for reaching the decision. What is it? Your Honor, we do not have the check that Mr. Hamadani received. Don't tell me what's not in the record. What's not in the record doesn't help. I'm asking is what is in the record to support the district court's finding? I mean, surely you prepared for this argument this morning. This must have been a question that must have occurred to you, would be asked. I'm sure you have an answer to this. Yes, I do, Your Honor. Okay. And what is the answer? The answer is the bond order itself required that the defendant's funds be posted. And specifically that they liquidate this account. Isn't that right? Yes, Your Honor. I'm puzzled why you say you can't trace the money. My notes are that on February 1st of 2011, the magistrate judge ordered that this particular account be liquidated. And that 16 days later, the record shows that Hamadani gave a check drawn on the Jackson, what is it, the Jackson Life account, checking the amount of $89,538.34 payable to the client that was endorsed to Horn, deposited in his trust account. Horn then drew a check on his trust account and put it with the court. Am I wrong about that? I think you're exactly correct about all that. So looking again at page 56, if I understand it correctly, the recording of the hearing that occurred on February 1st concerned whether the defendant's 401k account could be used because of other restrictions on 401k accounts for bail. And ultimately, the judge said, yes, it can be used, I think. But if it can't be, you'll work out some alternative arrangement. And that, in fact, was his order. But he never said it could be used for attorney's fees or that the attorney's fees could be used or the attorney's funds could be used to pay the bail or anything like that. That is exactly correct, Your Honor. And if it would be helpful, we can supply an audio recording. We have the audio recording of that hearing, and I can file it with a 28-J letter if the court wishes. In closing ---- Well, wait a minute. You still haven't answered my question, though. So tracing the funds, going back, the check actually deposited to the court came from where? Jackson Life. That's not what Judge Silverman said that he agreed with. It came from the trust account, didn't it? Well, I'm sorry. The check that was deposited with the district court was Your Honor's question? That was my question. It came from Mr. Horne's trust account. Okay. Okay. So if the money came from Horne's trust account, how do we trace it to the client? In the way that Judge Silverman suggested, which is it was the same amount that was received by the client from the liquidation of his 401K account, which he said he would liquidate and deposit as his bond when bond was set. And was ordered to do. And was ordered to. Correct. In closing, I would like to go back to an issue that you asked Mr. Zangwill about, which is standing. And I would note that there are two provisions of Federal law that are as close as I can come to providing the answer to the question that Your Honor asked about standing. I would note that in the Victim's Bill of Rights, which is Section 3771A of the Criminal Code, the defendant in a criminal case has the right to receive speedy restitution, speedy and full restitution. And in Section 3664M of the Criminal Code, the defendant, I'm sorry, the victim of a criminal offense can obtain an abstract judgment and can enforce a restitution judgment in its own name. Those are the two sections of the Criminal Code that I am aware of that come as close as to that issue as possible. What others do I have to this case?  Were any of these cited by the Federal Insurance when it filed, when it filed in the district court? No, Your Honor. Were they in their brief here? I don't believe so. Okay, so why are you citing them? Because I think that they reflect a policy by Congress, which is to enhance the rights of victims to enforce criminal restitution. But what good does a policy do if the person who's a beneficiary of it doesn't rely on it? I mean, the way we work these things is people cite things and they rely on them, and then we list the court's rules, and then we see whether the district court can sort of mix things up, can't we? I understand. This is what they could have done, right? I understand Your Honor's point. Okay. Thank you. Thank you, sir. I think Your Honor's time. We'll give you a minute for rebuttal. Thank you, Your Honor. To address the point of Mr. Woodlesley's claim that the victim has the right to obtain restitution under the restitution order, that is not the law. Victims have no claim or right to restitution order to be paid to them in criminal proceedings because the restitution order serves a penal rather than a compensatory purpose. Why don't you address instead the question of who owned the money? I mean, we went over this with government counsel. The money seems to have come from the 401K plan. Why isn't that – why doesn't that – and went to Mr. Horn's trust account, and then from there a check for the equivalent amount was paid to the court. Why isn't that – doesn't that support the district court's finding that that was the client's money? Because the affidavit filled out by Mr. Horn is evidence that those funds were Mr. Horn's money. Well, that may be so. So all you have said at that point is that there is conflicting evidence, and we have trial courts to make – to resolve conflicts in the evidence. And here we have a trial judge that – a district judge that found this to have been the client's money. And I thought our job was to see whether that was supported by evidence in the record, not whether there was evidence that would have supported a different finding. So Mr. Horn's affidavit, it seems to me, creates only a conflict. Well, and also then there's the pre-sentencing order that then discloses again that Mr. Hamadani liquidated his 401K, and those funds were used to pay Mr. Horn's attorney's fees. That was clearly set forth in the restitution order. And so the evidence weighs in favor of a finding that it was Mr. Horn's money versus a finding that it was not Mr. Horn's money. The way that this – I'm sorry. Just so I can get the timing right. This – the liquidation happened when? The liquidation happened in February of 2000 – After conviction. Yes. 2011. Yeah. 2011. Thank you. And just, again, maybe I'm missing something here. The court held this hearing that's recorded by tape, but it is summarized in the affidavit of Ms. Davis. And according to what she says, and we might have to listen to the tape, the judge ordered that the 401K funds be used as part of the bail package, yes? That's correct. So – and at that point, those were the defendant's funds, not the attorney's funds. At the time the order was made, that's correct. And as the government pointed out a minute ago, there's a big difference between – for bail purposes – between the defendant's funds and a third party's funds because someone might be tempted to flee if some stranger is going to lose money, but they will be less likely to flee if it's their own money. So the judge says, in effect, it's got to be the defendant's funds. I think it could be taken from the 401K. I'm not totally sure about that. If it can't, you guys work it out. But assuming it can, that's the money. And that's the money that's then paid. So how does Mr. Horn's own devices in any way change that situation? Mr. Hamadani owed Mr. Horn money under the attorney-client fee agreement. When Mr. Horn received those funds from Mr. Hamadani, they were used to pay his fees. That was the understanding between Mr. Horn and Mr. Hamadani. But it was contrary to what had been ordered by the court. It is true that there was not a disclosure of the intention to use those funds for Mr. Horn's fees. However, there was full disclosure at the time that the bond was posted and thereafter. And tell me again, when you say there was full disclosure at the time it was posted, exactly to whom was that disclosure made? That was made on Mr. Horn's affidavit that was filed with the court, where he claimed that those funds were his money and belonged to him. And that was entered on the docket indicating that those were Mr. Horn's funds. Is there any indication, other than the fact that that was done, that that was brought to the attention of the district court? Well, there's an indication that — I don't have a file stamp on my copy of the affidavit. I'm sorry? I don't have any file stamp on my copy of the affidavit. I do not have an explanation as to why it does not have a file stamp. However, it does appear in the docket under item number 22, which is attached in the excerpts of the record. And I do not have an explanation as to why it did not appear in the docket. But, I mean, why it did not — why it was not file stamped. However, it's — But it's item 22 on the docket? Yes. What's this thing that looks like it's got some kind of stamp on it above the — or right next to the date, or some kind of rubber stamp of something or other? Do you have that — do you have this thing again? That is stamped. Yes, there is a stamp on there. What is that? It's hard to read. It's stamped over printing. I can't make it out. It says something — the clerk, U.S. District Court, Central District of California. Maybe you're right. That might be the file stamp. It should have been in the corner, but maybe it just wound up in the wrong place. It should have been. I had assumed it was the verification of the signature, but I think you're still maybe right. I think this is the file stamp. They put it over the printing instead of in the blank spot. And then it further reflects — It's out of the old days where they always used to do it by hand. It's probably done by machine or something. I see. So this is then filed, and presumably everybody has notice of this thing. Yes. And then on the docket, it shows under item — on 2-18-2011, it shows — I'm sorry. What page are you looking at? Oh, that's — I don't have the exact citation, Your Honors. Unfortunately, I'm a little ill, and I wasn't able to get my full file together for my hearing today. So I apologize. I have the flu. It is in the latter section of the excerpts of the record that we offered, meaning the appellant offered. What is the if? I'm sorry? What is the if you're referring to? I'm referring to the docket, item number 22. It says — Yeah. We have the affidavit. That's not the question. The question was whether it's on the docket. Yes. Usually the first page of the excerpt of the record should contain a copy of the whole docket, but it didn't. But I'm sure it's available electronically. It says on 2-18-2011, financial entry as to defendant David I. Hamadani received 89,530.34 into the registry of the court from Gerson S. Horn. Ray Minnis of in-chambers order directive no proceeding held. Yeah. But that doesn't — I mean, by itself, it doesn't — all it shows is that Mr. Horn was the person who physically presented it, or at least it's ambiguous on that. It's page 108, by the way. Thank you. I would have to surmise, again, that the way that they obtained that information was from the affidavit, because that's — those are the facts that were listed in the affidavit, and that would have been the only way for the court to have obtained that information. And unfortunately, you know, I don't have the evidence to link that. However, it is a reasonable conclusion to draw that the way that the district court obtained that information was from the affidavit. And then the order from the magistrate approving the bond, which is pages 1 and 2 of our excerpts of the record, show approved, and then the judge's signature, 218.11, and then referring to the cash receipt deposited by Mr. Horn, and then the amount, 89,530.34. Presumably, again, a reasonable conclusion to draw. Thank you very much. The case is argued. The stand is submitted.
judges: Rakoff, Kozinski, Silverman